Larry Urban v. Merit Systems Protection Board 07-3027 Every case that follows Conner involves two things. One, that there is a mixed case complaint before a court and secondly, there is an administrative action before an administrative agency. So in Conner, the regulation, specific regulation that was before the court was that the filing of a civil action by an employee or applicant involving a complaint filed. In other words, before the court was a complaint that was filed in connection with an administrative proceeding. In Conner, what happened was that there was a district court action, discrimination action before the court. But later on, there was an amendment of the complaint in that district court action to include the administrative action that was before the MSPB. So it was the inclusion of the MSPB action, administrative action before the court. That made the double action, the same action in the district court. You're talking about Conner, right? Yes, sir. Why don't we talk about Urban? In Urban, what happened was that there was a class action and the complaint was amended. The complaint was amended on June 25, 2005 and the amended complaint only involved increasing the nine regional plaintiffs and they were added additional 800 employees into it. So it did not involve any kind of an amendment to include the administrative action. That may be the case, but is it not true that the case before the district court involved and challenged the risk of these employees and alleged that it was a result of age discrimination? Yes, your honor. How is that not the same as at least some, perhaps not all because you've got this non-selection issue, but at least a large portion of the complaint that your client filed before the MSPB? Yes, it was a class action that involved discrimination, but it did not involve in any way Mr. Urban's dismissal because it came way before. But the class action was replete in your memorandum. I mean, there were references to the RIF. At one stage it was potential, then it became real. The damages I presume you were seeking in the civil action would have been, if they had found the RIF unlawful, compensation to the client's back pay, wages, whatever, from the time the RIF was implemented. How is that different than what your client would secure before the MSPB? Well, MSPB actually involved that he wanted to transfer to avoid RIF. He applied for No, no, no. So that's what I started off. I'm sorry. I started off, but I think the other category, rightly or wrongly, the non-selection for the other position, in my view, is kind of a separate thing. But outside of the transfer issue, to the extent that you were seeking to challenge before the MSPB the propriety of the RIF, the legality of the RIF, and as that related to the age discrimination cases, that was already covered in the class action, correct? Yes, yes. So the question is, what are we left with then that wasn't covered in the class action that was included in your MSPB appeal? His protest, his discharge with regard to non-transfer in terms of his VA rights, his transfer to Alaska. And where does the, I mean, you referenced that there's a board regulation, or the board has jurisdiction over priority consideration matters for re-employment. Is that what you're relying on, that all of these things you've alleged with respect to competitive areas and non-selection fall under that? No, the board action in connection with the MSPB involved, once again, his transfer to Alaska and other rights that he felt that he had, as a matter of preference, they did not, they laid him off because that he qualified for pension other than FAA pension. So that, in other words, that they did not transfer him to Alaska because he could qualify for another pension. And they didn't want, they did not want other folks who did not have that right to early retirement. They wanted to save the other folks. Well, that's your allegation, but what happened? Somebody, he applied for a position in Alaska. Was this in the competitive area? Yes, yes. Okay, and he, other people did it, it was an open competition. Yes, yes. And he didn't get the job, somebody else did. Yes, yes, that is correct. Okay, and your allegation is that they should have considered his, he should have gotten some veterans preference points and that those weren't given to him? That's right, in connection with the MSPB appeal. And what else, what else was wrong legally with the selection or non-selection? Well, they, that he qualified for pension, so they overlooked that and they said that they did not qualify for any pension to be transferred to Alaska. And that is one of the discrimination claims that is different than the class action discrimination claim. Mr. Jacobson, could you get out, do you have your brief there? Do you have the appendix there? If you go to page 99 of the appendix, there is a small paragraph D on page 99, and this seems to be kind of a catch-all paragraph in which, on behalf of Mr. Urban, you are advancing various complaints about the way the RIF was conducted, is that correct? Yes. What do you, what are you getting at in each of those things? The first you say is they failed to properly define and apply the scope of the competitive area. What do you mean by that? As I recall, the competitive area was defined in terms of very narrowly as opposed to broad application in terms of nationwide. So that is your claim about the competitive area. Then you say they did not give effect to employees' performance ratings. Yes, it has to do with the employees' ratings, performance ratings for the particular year, same question, at the time of the RIF. Then you say they failed to offer employees' assignments to other available positions. Yes, and that is, as I recall, in relationship to the assignment to Alaska, and that is what we have been talking about in terms of that he was discriminated because he was older, that he already qualified for a pension, and they wanted to save those younger folks who did not qualify for a pension. Now, there are some other things in here afterward, releasing employees without regard to attention standing, not giving notice of eligibility for re-employment, and failing to provide employees with information about re-employment priority. Now, are those related to the RIF or are those really different things? I think the RIF, in the sense that this reassignment that we have been talking about, they are part and parcel of the RIF, that he wanted to be saved from the RIF, and so these assignments, based on evaluate to determine who ought to be saved from the reduction in force. Oh, so these allegations go to the reduction in force and not to the issue of whether or not he should have been selected for another position? Well, as I say, Your Honor, in order to be saved from RIF, you are asking for reassignment, and other criteria. Well, I think I'm saving about five minutes. You may say whatever is left. Mr. Connick. May it please the Court, I'd like to begin by addressing Mr. Urban's claim that the Board has In his reply brief, he raised several issues, the first of which is a claim under BO. That claim is not brought up below, and there's no indication from the record or anything that that claim was presented to the Secretary of Labor, so there's no BO in that claim. Well, I mean, there's one in the Board opinion. I mean, in his filing before the MSPB, there's a reference to it. There's a reference to his veteran's preference. Right. So why isn't, are you making an argument that he waived it, that that wasn't sufficient? I don't understand. I think that the Is it the wrong, you're saying that the Board doesn't have jurisdiction for that claim in any event, because that has to go through the DOL? Correct, Your Honor. The second claim he raises is under USERRA, and I don't think there's any allegation or a showing that Mr. Urban's military status was factored into the agency decision. It was really a discrimination claim. And the final goes to the RIF procedures, not accounting for his seniority and other things. And I would point out two things there. It's a non-selection. It's not something that the Board has jurisdiction over. In addition, Mr. Urban filed a grievance concerning the Alaska non-selection on September 13, 2005. And under the RIF Is that in the record? It is. It's in his complaint, Your Honor. I think it's page 101, perhaps. I'm sorry, page 100, under paragraph 7. The appellant filed a grievance in a limited fashion without legal assistance. It does not discuss his grievance. And? My argument there would be that he had one forum within which to challenge his non-selection, and he filed a grievance. Did the Board reference that at all? It was not in the initial decision. So that wasn't the basis upon which the Board said it didn't have jurisdiction. No. The Board, the administrative judge said it's a non-selection. It's not something that the Board has jurisdiction. Well, do you concede that the Board does have jurisdiction? I mean, I'm not that clear. Judge Shaw was reading for that sort of summary paragraph on 99 in the appendix. All of those allegations or charges with respect to wrong competitive area, performance ratings, that's not non-selection. Those are sort of charges as to the failure to observe, arguably, alleging at least there were some failure in following procedures. Is that something over which the Board has jurisdiction? Well, under the memorandum of agreement, the Board has no jurisdiction unless it's a discrimination. So these various— The Board doesn't have any jurisdiction over RIF failure to follow proper law under RIF? Under the memorandum of agreement entered into between the FAA and the employees, if it was a non-discrimination allegation, the choice was the grievance procedure or the guaranteed fair treatment procedure available to FAA employees. So that through that memorandum, your answer is he would have otherwise— the MSPB would otherwise have jurisdiction over these kinds of cases but that he somehow waived his right to have those cases heard because of this memorandum agreement? Yes, Your Honor. Mr. Carney, the difficulty is though there's no— in this case, we have a complaint which on its face, and I'm looking at what was it, 96 through 100 of the joint appendix. We have on its face a number of issues raised which appear to be fair game to challenge a RIF, okay? Yes, Your Honor. The Board, however, only addressed what I'll call the Connor issue by way of shorthand. And you've made some arguments here on this afternoon. And for all I know, you may very well be correct with respect to what you've said about the memorandum of agreement and certain other things. You might well be correct. But the problem is shouldn't really the Board address these additional claims in the first instance in the complaint? The problem is we have no decision from the Board which tells us why jurisdiction is lacking based on these other items. And wouldn't it be better for us to have the Board tell us why there is or is not jurisdiction based on these things? And in that forum, Mr. Urban and the Board, you or someone else I suppose, would be able to make the appropriate arguments and the Board would decide. The problem is it doesn't seem that all the jurisdiction issues have been joined at the Board level here. That's what bothers me a bit. Well, when I initially read the complaint, I read these allegations of irregularities, if you will, in the RIF procedure as all part of this age discrimination. The intent was to discriminate against him based on his age. And that these other alleged violations of RIF rules were how they did it. I'm not sure if that's how the administrative judge viewed it. Well, he talks about the structuring of the competitive area. That really seems to go afield from a jurisdictional issue, from a discrimination. What I'm saying is it may very well be that everything you've told us today is the right answer as to why there's no jurisdiction. But the problem is you're telling us that based not on a decision of the Board, namely, you're not saying the Board determined these things and here's why they're correct. You're telling us these things in response to our questions. Yes, sir. Shouldn't the Board really address these jurisdictional issues in the first instance and maybe the result will be the same, maybe not? Well, Your Honor, I'm on page 29. I mean, isn't that the safest approach here? To make sure on jurisdiction. Yes, Your Honor, of course. Yeah, so why not let's do it that way? Well, I think I'm on page 29. Since we don't know for sure. It tells the employees involved that you may elect only one forum listed below. I'm sorry, what page are you on? Page 29, Your Honor. You may elect only one of the forums listed below to challenge the RIF action whether or not your claim involves an allegation of discrimination. He has selected the district court as the forum to challenge the RIF action. And if the district court action does not allow him to challenge things on other than ADA grounds, well, that's a reflection of his choice to go to the district court. Well, let's have the Board tell us that. Again, you may be right. But it just seems to me, wouldn't it be clearer if we had, I mean, we have a bunch of things in the complaint which sound appropriately to be challenges to a RIF that don't sound in discrimination. And the Board hasn't told us anything as to why he loses on those points. And again, you might be right. And all your arguments might be right on target, but we don't know, we're not hearing it from the Board, and the Board hasn't addressed it in the first instance. What harm is there in having the Board just tell us right or wrong? Yes, Your Honor. Just, if I may, to back up the other argument that I made earlier about the non-appealability of these kinds of matters to the Board. On page 31 and 32, Mr. Urban was a bargaining unit employee, and it says, Challenges that do not involve allegations of discrimination, and he has allowed the agreements procedure and the guaranteed fair treatment appeal procedure. There's no, he's not allowed to take those issues. Are you saying that the answer to Judge Shull's question is no, it would not make sense to remand because the issues that are arguably different are not Board issues? I think that's correct, Your Honor. These are not issues. I agree it would have been nicer if perhaps the Board decision had been more explicit on that, but that these other items are not appealable to the Board. On what, because of some memorandum of understanding between the union and the government, or because under law the Board wouldn't have jurisdiction? Is it because the Board wouldn't have jurisdiction over them? Is it because of some memorandum? Well, Mr. Urban is employed by the FAA, and they have this guaranteed fair treatment appeal that is not widely used elsewhere with agencies under Title V. That is his, where he can take these kinds of claims. So the MSPB therefore does not have jurisdiction over them because this is exclusive. Now is that statutory or is that based on some memorandum? What's the basis for that? A collective bargaining agreement? This was negotiated between the union and the FAA, so this is the basis. I believe, Your Honor, I'm not going to be able to say to you that there is a statutory basis that distinguishes FAA from other agencies. I can't recall at the moment. Well, once again, just as Judge Schall was saying, there is no reference to this, am I wrong, in the AJ's opinion, that this was the basis for which the AJ said the Board had jurisdiction. That's correct. I mean, that's why I'm having – I don't doubt anything that you're telling me today. It's just that I don't really have a basis in which to evaluate it. Yes, Your Honor. As I said earlier, I think the AJ may have viewed this as a broad ADA age discrimination claim and that these other items were the means by which they accomplished the age discrimination. So they sort of looked at it as one collective. I think, quite frankly, I think you're doing an excellent job with a decision that has a lot of gaps in it. I think that's the problem. You've made some fine arguments here, and they may well be correct, but the problem is we don't have the Board having addressed these other issues. I think that's the difficulty. Again, if it goes back to the Board and these issues are ventilated, it might well turn out exactly as you say, but we're in a little bit of a difficult situation. I only speak for myself. For us to rule on the grounds that you're urging, the things you've said to me and Judge Prost and Judge Lurie, when the Board hasn't said so and there's not really much of a record before us on those items. It's not your fault. It's just sort of the circumstance of the case as it presents itself to us. I had some other arguments on Connor. I'm not sure that they're really necessary. Can I just add just my own edification? For RIFs in general, are these kinds of matters, leaving the FAA aside, are these kinds of matters generally within the MSPB jurisdiction? Yes. If you want to challenge the competitive selections or the competitive areas or priority, that's all within the Board's jurisdiction. You're saying the collective bargaining agreement, if that's what it was, waived any statutory rights to appeal to the Board on these issues? Your Honor, I'm not saying that. I believe that there is statutory authority for treating FAA employees differently and that this memorandum of agreement between the agency and the union reflects that. I'm sorry I cannot recall a citation to that authority. That's my understanding. I just have one question on the Connor issue. Would it have made a difference here if, say, Mr. Urban filed his Board appeal on the 3rd of November? Yes, Your Honor. What if on November the 4th, right away, he had turned around and sought to withdraw from the district court class action case? Well, there's really two reasons. Would that have made a difference in your view? It would have made a difference on at least one issue, and that's that you cannot have the same claim going in the district court and before the Board at the same time. If there's no overlap, then perhaps that's not a problem. But when he filed with the EEOC to waive the EEOC process and go to district court, Your Honor, I believe he waived future participation in the administrative process. So that no matter when he withdrew from that case, he had waived. You're saying the die was cast when he joined the class action? Yes, Your Honor. Because I was getting what I was getting at is, I mean, he does have a problem here in that he waited between two and a half and three months to leave the class action case. Whereas it might be a different case, perhaps, if he had turned around right away and tried to pull out. But I understand the argument you're making. Thank you, Your Honor. Thank you, Mr. Conning. Dickinson has four and a half minutes. Thank you, Your Honor. Let me say this. Mr. Urban joined in the class action, and I'm not really sure he knew what he was doing. I didn't find out until about January of 2006 in which he was involved in the class action. Well, what about the grievance, though? Was there another grievance that he filed challenging the procedures used in the reduction in force? No. I think that all he did was to, when he received his notice, actual notice of writ, he chose. He chose to go to grievance procedure or to go to MSPB, and that's what he did exactly. Under the notice, he did exactly what he was told to do. And writ is something that an employee has a right to go to MSPB on. It's in that memorandum of understanding that was given to him. Let me just ask you quickly also, in the paragraph on page 99 that Judge Schall had earlier referred you to, which essentially summarily seems to summarize the contentions with respect to alleged violations of the writ procedures, are those all in the context of age discrimination? Are all of the allegations about improper competitive areas, improper ratings, is that all part and parcel of age discrimination? No, Your Honor. The short answer is no. It has to do more with him not being saved from writ. And it doesn't necessarily, had he been transferred to Alaska, a matter of fact, he is in Alaska right now, that he is serving his six months additional service in Alaska to try to save him from 20 years. So the short answer is no, Your Honor. And what's the status of the class action? I don't know. I think that the district court motion for summary judgment was denied principally because there was no discovery done. So I think that's, you know, I'm not real sure as to where that is, Your Honor. But I do think that the sole reason that the hearing officer, the board, denied the jurisdiction was related to Connor. And Connor doesn't apply in this case because the district court complaint was not amended to include the MSPB action, the RIF itself. So, you know, all the cases that follow Connor, every case that there had… Well, it includes the RIF. It challenges the RIF. If the class were to prevail in the class action, it would overturn the RIF. Yes, but at the same time, the RIF, it was a kind of blanketed proposed RIF at the time. And anything could have happened. Mr. Ervin did not receive any kind of a notice of the actual RIF itself because some of the employees were… FAA employees were saved from the RIF itself. So until RIF notice was given to him in October, he did not know he would be actually terminated. Thank you, Mr. Dickinson. The case will be taken under advisement. All rise. The honorable court is adjourned from day to day. Thank you.